IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

MICHELE F. PRICE, )
)
        Plaintiff, )
)
vs. ) Case No. 08-4126-CV-C-ODS
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
        Defendant. )

## ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION AND REMANDING FOR FURTHER PROCEEDINGS

The Commissioner found Plaintiff to be disabled from April 1, 2006 through August 13, 2007, but not from August 14, 2007 to the date of his decision on October 2, 2007.[1] The determination that Plaintiff was disabled from April 1, 2006 to August 13, 2007, is not challenged; the issue is whether Plaintiff's disability terminated on August 14, 2007 or continued beyond that date. The Court concludes there is not substantial evidence in the Record to support the Commissioner's decision.

Plaintiff has the severe impairments of bipolar disorder with depression, as well as obesity and diabetes. From 1998 to 2007, Plaintiff was hospitalized several times for psychotic episodes which included symptoms of poor judgment and insight, suicidal thoughts, hallucinations, and poor concentration. During these episodes, Plaintiff was unable to independently take care of herself. Plaintiff's most recent hospitalization began on April 20, 2006 and ended on May 25, 2006. Following that hospitalization and until July 31, 2007, Plaintiff lived in a residential care facility for people with physical and

---

[1] Plaintiff alleges a disability onset date of December 1, 1998. However, the ALJ found that Plaintiff had performed substantial gainful activity during much of the time between December 1, 1998 and March 30, 2006, and therefore, was not disabled during that period. The earnings record shows Plaintiff earned $526.05 in 1998, $6,539.08 in 1999, $7,955.18 in 2000, $13,137.28 in 2001, $13,200.96 in 2002, $14,623.96 in 2003, $21,814.27 in 2004, $28,615.84 in 2005, $5,887.96 in 2006, and $0 in 2007. Plaintiff does not argue this determination was erroneous.

mental disabilities. She then moved in with her parents.

On August 13, 2007, Plaintiff's treating psychiatrist, Uzma Zafar, M.D., reported that Plaintiff was presently compliant on her medications, that her bipolar disorder was in remission, and that her Global Assessment of Functioning ("GAF") was 80. The ALJ therefore found that Plaintiff's medical condition had improved and that she was no longer disabled as of August 14, 2007.

The case must be remanded for reconsideration of the following matters:

*1. Plaintiff's Residual Functional Capacity ("RFC")*

On September 5, 2007, at a hearing before the ALJ, the ALJ asked only one hypothetical question to the Vocational Expert ("VE"). He asked the VE to assume a person that could perform a full range of light work except the person should avoid all climbing of ladders, ropes, and scaffolds, and that the person is able to understand, remember, and carry out at least simple instructions and non-detailed tasks, can demonstrate adequate judgment to make simple work-related decisions, can respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others is casual and infrequent and can adapt to routine, simple work changes. The ALJ then asked the VE whether such a person could return to Plaintiff's past relevant work as a telecommunications operator. The VE answered that yes, such a person could perform work as a telecommunications operator. R. 39-41.

On cross-examination from Plaintiff's attorney, the VE conceded that the job of telecommunications operator involves constant interaction with other people, though over the phone, rather than in-person. R. 41. The ALJ did not ask the VE whether the hypothetical person could perform other work in the national economy, nor did he ask additional hypothetical questions with different limitations. However, in his decision, the ALJ found that beginning on August 14, 2007, Plaintiff had the RFC to perform light work, except that she was precluded from any work that required climbing, and she was limited to work that required only simple, one or two-step instructions. R. 21. The ALJ then found that Plaintiff could return to her past relevant work as a telecommunications operator. R. 23. The ALJ did not explain why the hypothetical to the VE included a

2

restriction on contact with people. It is also unclear why the ALJ removed this restriction when determining Plaintiff's RFC.

Accordingly, on remand, the ALJ shall consider whether Plaintiff is limited in her ability to work in constant contact with others, and if so, whether Plaintiff would therefore be precluded from working as a telecommunications operator. The ALJ shall also consider whether Plaintiff's RFC allows her to perform other jobs in the national economy.

The Court also notes that the record contains no opinions regarding Plaintiff's limitations in a work setting. Specifically, in response to interrogatories regarding Plaintiff's limitations, Dr. Zafar stated that it was not possible for her to assess Plaintiff's ability to perform in a professional setting because she had only seen Plaintiff while at the residential facility. She concluded that she could not make a prediction in that regard. R. 428. Following the ALJ's decision, on December 4, 2007, Plaintiff was evaluated by Bernard D. Beitman, M.D. Dr. Beitman concluded that "[d]espite a very normal appearance at first, this woman is extremely fragile underneath. She has been terrified and terrorized by other people, has been taken advantage of by men, has exhausted herself with work, and has failed in caring for her children. She is felled with deep regret about what might have been and a strong inability to face the world to take care of herself." He assessed Plaintiff with a GAF of 35. See Pl's Brief, Exh. 1.[2] Dr. Beitman's opinion, while not including Plaintiff's limitations in a work setting, suggests a darker prognosis than Dr. Zafar's. The Commissioner is instructed to arrange for a formal evaluation of Plaintiff that includes an opinion as to her limitations in a work setting.

---

[2] Dr. Beitman's report references the "testimony" of Plaintiff's caseworker at the residential facility, Bill Rudroff, taken on November 26, 2007, in which he states that Plaintiff "had a problem being around black males. And sometimes she would become verbally very abusive of them and more frequently report that they had attempted sexual contact or actually performed sexual acts on her when there was no actual body contact." He also stated that it was difficult for Plaintiff to be in the community because of her propensity to report on people acting out sexually against her. The record does not include this statement from Bill Rudroff, and the ALJ does not consider it in his decision.

*2. Plaintiff's Credibility*

At the hearing, Plaintiff testified that she was still having problems with depression, stating that it kept her from "get[ting] out of bed for a couple days." R. 35. She testified that she has depressive episodes that last for a couple days about twice a month. R. 38. Plaintiff testified that she has problems being out in public because she doesn't like being around all the people, and that she has difficulties concentrating. R. 38-39. The VE testified, in response to a hypothetical question from Plaintiff's attorney, that a person that has had several hospitalizations due to depressive psychosis, and that cannot get out of bed due to depression at least twice a month for a couple of days, would not be able to hold a job because of excessive absenteeism. R. 42.

The ALJ found Plaintiff's testimony to be not entirely credible. While the ALJ listed all of the factors he was supposed to consider when assessing Plaintiff's credibility, he only actually relied on one medical record from Dr. Zafar dated August 13, 2007, finding Plaintiff's condition to be improving. He further stated that no records after that date indicated Plaintiff required additional hospitalizations. On remand, the ALJ shall more fully consider the relevant factors set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), including Plaintiff's daily activities since leaving the residential treatment facility. The ALJ should also consider whether Plaintiff's depressive episodes, while perhaps not keeping her from finding employment, would preclude her from holding a job for any significant duration because of absenteeism problems.[3]

For these reasons, the Commissioner's final decision is reversed and the case is remanded for further proceedings consistent with this Order and Opinion.

---

[3] Plaintiff was fired from her most recent job as a telecommunications operator because of absenteeism. R. 120. Before that, she held a job as a cashier at a fast food restaurant for a few months in late 2002 to early 2003; as a cashier at a grocery store from 2000 to 2002; and as a cashier and greeting card coordinator at a greeting card store from January 2002 to June 2002. The record does not reflect why Plaintiff left these jobs after such limited durations.

IT IS SO ORDERED.

                                              /s/ Ortrie D. Smith
                                              ORTRIE D. SMITH, JUDGE
DATE: May 19, 2009                        UNITED STATES DISTRICT COURT